# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CHARLES FRANKLIN GLASSCOCK**, | Case No. 2:14-cv-016-SI |
| Petitioner, | |
| | **OPINION AND ORDER** |
| v. | |
| **JERI TAYLOR**, | |
| Respondent. | |

Anthony D. Bornstein, Assistant Federal Public Defender, Federal Public Defender's Office, 101 SW Main Street, Suite 1700, Portland, OR 97204. Of Attorneys for Petitioner.

Ellen F. Rosenblum, Attorney General, Kristen E. Boyd, Assistant Attorney General, Oregon Department of Justice, 1162 Court Street NE, Salem, OR 97301. Of Attorneys for Respondent.

**Michael H. Simon, District Judge.**

Petitioner, an inmate at the Two Rivers Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition for Writ of Habeas Corpus (ECF No. 2) is DENIED.

## PROCEDURAL BACKGROUND

On June 5, 2006, a Lane County grand jury indicted Petitioner on three counts of Rape in the First Degree, two counts of Unlawful Sexual Penetration in the First Degree, one count of Sexual Abuse in the First Degree, five counts of Felon in Possession of a Firearm, one count of

Felony Assault in the Fourth Degree, and one count of Menacing. Resp. Exh. 102. The case was

tried to a jury, which convicted Petitioner on all counts. Resp. Exh. 101. The trial judge

sentenced Petitioner to a total of 560 months of imprisonment. Resp. Exh. 101.

Petitioner filed a direct appeal, asserting eight assignments of error:

> FIRST ASSIGNMENT: The trial court erred in granting the state's motion in limine prohibiting the defense from exploring a past act of Bonnie Glasscock and prohibiting defense from calling Julie Willoughby as a witness to that act.

> SECOND ASSIGNMENT: The trial court erred when it allowed the prosecutor to make improper remarks in closing and rebuttal arguments.

> THIRD ASSIGNMENT: The trial court erred in refusing to give defendant's requested jury instruction on defense of others.

> FOURTH ASSIGNMENT: The trial court erred by failing to instruct the jury that ten or more of its members must agree on the same set of underlying facts in order to convict defendant of any count in the indictment.

> FIFTH ASSIGNMENT: The trial court erred in failing to merge counts 7-11.

> SIXTH ASSIGNMENT: The trial court erred in imposing consecutive sentences on counts four and five.

> SEVENTH ASSIGNMENT: The trial court erred in imposing a departure sentence on counts 8, 9, 10, and 11.

> EIGHTH ASSIGNMENT: The trial court erred in imposing Measure 11 sentences.

Resp. Exh. 103, pp. B-D (summarized in the Table of Contents). The Oregon Court of Appeals

affirmed without opinion, and the Oregon Supreme Court denied review. *State v. Glasscock*, 226

Or. App. 604, 205 P.3d 102, *rev. denied*, 346 Or. 590, 214 P.3d 822 (2009).

Petitioner then sought state post-conviction relief ("PCR"), alleging numerous claims of

ineffective assistance of trial and appellate counsel, as well as claims of trial court error. Resp.

Exh. 108. Following an evidentiary hearing, the PCR trial court denied relief. Resp. Exhs. 146,

147. Petitioner appealed, alleging five assignments of error:

> FIRST ASSIGNMENT: The PCR court erred in denying relief where Petitioner established trial counsel failed to object to the admission of the victim's hearsay statements where the state failed to provide adequate notice of its intent to offer those statements under Ore. R. Evid. 803.

> SECOND ASSIGNMENT: The PCR court erred in denying relief where Petitioner established that trial counsel failed to object to an out-of-court statement of a medical diagnosis.

> THIRD ASSIGNMENT: The PCR court erred in denying relief where Petitioner established trial counsel was inadequate and ineffective for not offering testimony from an expert on the subject of the significance of the state expert's physical findings.

> FOURTH ASSIGNMENT: The PCR court erred in denying relief where Petitioner established that trial counsel was inadequate and ineffective for not offering testimony from an expert on the subject of the reliability of children's memories.

> FIFTH ASSIGNMENT: The PCR court erred in denying relief where Petitioner established that trial counsel failed to object to improper statements made by the prosecutor during closing arguments.

Resp. Exh. 149, pp. i-ii (summarized in the Table of Contents). The Oregon Court of Appeals

affirmed without opinion, and the Oregon Supreme Court denied relief. *Glasscock v. Franke*,

258 Or. App. 534, 311 P.3d 527, *rev. denied*, 354 Or. 490, 317 P.3d 255 (2013).

On January 3, 2014, Petitioner filed his *pro se* Petition for Writ of Habeas Corpus in this

Court. Petitioner alleges eleven grounds for relief:

> **Ground One:** Denial of Right to Counsel, witnesses in favor, and confrontation of adverse witnesses (6th Amnd.)
> **Supporting Facts:** Petitioner was denied a fair opportunity to secure his counsel of choice, denied witnesses for his defense, and was subjected to hearsay of a declarant not at trial.

> **Ground Two:** Insufficient evidence to sustain jury findings of guilty (14 Amend. Due Process).

**Supporting Facts:** The State of Oregon presented false material evidence and testimony and obtained a conviction based on false evidence denying petitioner due process and fundamental fairness.

**Ground Three:** Actual Innocence - Newly Discovered Evidence (14th Amend. Due Process)
**Supporting Facts:** Petitioner has newly discovered evidence of innocence that, if not reasonably considered by this court, "will result in a fundamental miscarriage of justice."

**Ground Four:** Denial of a Meaningful Opportunity to Present a Complete Defense (14th Amend. Due Process).
**Supporting Facts:** The State moved to suppress/exclude defense evidence and witnesses. The trial court excluded defense evidence and allowed hearsay statements.

**Ground Five:** Trial court error - jury instructions (14th Amend. Due Process)
**Supporting Facts:** The court gave improper instructions and refused instructions that should have been allowed for the defense.

**Ground Six:** Denial of due process and a fair trial (14th Amend. Due Process)
**Supporting Facts:**
(a)      [The prosecutor] used false evidence on material matters;
(b)      [The prosecutor] engaged in improper conduct by making misrepresentations of material facts, vouched for the credibility of her witnesses, bolstered their testimony, gave unsworn testimony, referred to matters outside the record, denigrated the defense, verbally attacked defendant and called him a "liar," made burden shifting comments, commented on defendant's custody status, appealed to the passions/emotions of the jury and urged them to convict for an improper purpose, and misstated the law;
(c)      [The prosecutor] withheld exculpatory evidence/*Brady* material.

**Ground Seven:** Denial of motion for a new trial (newly discovered evidence) (14th Amend. Due Process)
**Supporting Facts:** The court denied petitioner's motion without reaching its merits.

**Ground Eight**: Denial of effective counsel on direct appeal (14th Amend. Due Process)
**Supporting Facts:** Appellate counsel failed to raise as error:
(a)      the state's expert testimony made comments on the credibility of the complainant;

(b)     trial court error in allowing jury instructions "testimony false in part" against defendant;

(c)     trial court's denial of petitioner's motion for new trial without reaching the merits.

**Ground Nine:** Violation of due process where the state obtained a judgment denying Petitioner's PCR claims by the use of false material evidence depriving Petitioner of due process and fundamental fairness (14th Amend. Due Process)

**Supporting Facts:** The state used false evidence (again) and trial counsel committed perjury regarding events at the trial level.

**Ground Ten:** Denial of effective assistance of trial counsel (6th Amendment).

**Supporting Facts:**

(a)     trial counsel failed to move for severance of improperly joined charges;

(b)     trial counsel failed to adequately investigate and bring to trial evidence that would have affected the outcome of trial;

(c)     trial counsel failed to obtain defense expert exams (psychological/medical);

(d)     trial counsel failed to utilize expert defense testimony;

(e)     trial counsel failed to advocate for evidence suppressed by the state and excluded by the court;

(f)     trial counsel failed to object to the Rule 803 violations;

(g)     trial counsel failed to properly object and prevent hearsay testimony;

(h)     trial counsel failed to object to the prosecutorial misconduct by the prosecutor;

(i)     trial counsel failed to zealously advocate for Petitioner when he alerted the jury to Petitioner's custody status and conceded guilt;

(j)     trial counsel failed to move for a new trial after new evidence was discovered by Petitioner and confirmed by trial counsel's investigator.

**Ground Eleven:** The cumulative effect of the errors specified in the previous claims (1-10) combined to deprive Petitioner of due process (14th Amend. Due Process).

**Supporting Facts:** The facts contained in the supporting facts of the foregoing claims (1-10) are realleged and incorporated herein.

ECF 2 at 6-9.

In his counseled brief in support of the Petition, Petitioner does not address all of the claims alleged. Petitioner's brief does not specifically identify the claims addressed, but the arguments presented by Petitioner appear to correlate with claims alleged in Ground One, Ground Four, Ground Six (subpart b), Ground Ten (subparts (a), (c), (f), and (h)), and Ground Eleven.

Respondent contends relief should be denied on the claims alleged in Grounds One, Two, Three, Four, Five, Six, Seven, Eight, Nine, and Ten (subparts (a), (b), (d), (e), (g), (i), and (j)) because those claims were not fairly presented to the state's highest court and are now procedurally defaulted. Respondent argues relief should be denied on the claims alleged in Grounds Two, Three, Five, Seven, Eight, Nine, and Ten (subparts (b), (d), (e), (g), (i), and (j)) because Petitioner did not address those claims in his brief, and has failed to meet his burden of proof. Finally, Respondent argues that, to the extent the claims alleged in Grounds Four, Six, Ten (subparts (a), (c), (f), and (h)), and Eleven were fairly presented to the Oregon state courts, the state court decisions denying relief were not objectively unreasonable and are entitled to deference.

## SUMMARY OF FACTS

Petitioner married his wife in 1997. At the time they were married, Mrs. Glasscock had a daughter (Petitioner's stepdaughter) who was almost three. Petitioner's stepdaughter is the victim of Petitioner's sexual offenses.

On March 10, 2006, Petitioner assaulted his wife. Petitioner's stepdaughter witnessed part of the assault. The following morning, Mrs. Glasscock called her mother to say that Petitioner had assaulted and threatened her. Mrs. Glasscock's brother visited her and took pictures of her injuries. Petitioner left the family residence and stayed away for several weeks.

Mrs. Glasscock went to visit her mother, accompanied by her daughter. During that visit, the daughter disclosed to her grandmother that Petitioner had sexually abused her. The victim's grandmother told the victim's mother about the disclosure. The victim had previously told her mother about the sexual abuse, but Mrs. Glasscock did not report it. The next day, Mrs. Glasscock had her daughter examined by a family doctor, and thereafter on April 4, 2006, she contacted the Department of Human Services and reported the sexual abuse disclosures.

On April 18, 2006, the victim was interviewed at the Child Advocacy Center. She reported repeated acts of sexual abuse by Petitioner. That interview was recorded and played for the jury. The victim was examined and interviewed by a nurse practitioner, who testified at trial. The victim had also disclosed the sexual abuse to friends, and those friends testified at trial.

During the time Petitioner was away from the family residence, he contacted a friend and asked him to retrieve some guns from the residence. The friend agreed to do so, and along with another individual went to Petitioner's residence, where they located five firearms. They took the firearms to another residence for storage. Feeling unsure about the firearms, the two contacted law enforcement. An officer informed them that Petitioner had a prior felony conviction and was prohibited from possessing or owning firearms. The officer retrieved the guns.

Petitioner's stepdaughter (*i.e.*, the victim) testified that Petitioner raped her three times. She testified that the first time happened when she was approximately four and a half years old. Petitioner entered her room while she was sleeping and told her to get up. He took her into the family room and told her to take her clothes off and to sit on his lap, facing him. When she complied, he penetrated her with his penis. Petitioner warned her not to tell anyone.

Petitioner's stepdaughter also testified that the next time he abused her she was about seven years old, and it happened in a bathroom while her mother was at the store. Petitioner took

the girl into the bathroom and told her to take her clothes off, which she did. He then told her to lie down on the floor and split her legs. He then penetrated her, first with his finger and then with his penis. Petitioner warned her not to tell anyone about the incident.

The third incident occurred when Petitioner's stepdaughter was approximately eight-and-one-half years old. She testified that Petitioner entered her bedroom and woke her, then escorted her to a TV room and told her to sit on his lap. He then told her to remove her pajama bottoms, and he penetrated her with his finger. Petitioner then took her outside to a camp trailer parked next to the house. When they got to the trailer, Petitioner took off his clothes and got into one of the beds. He told his stepdaughter to get on the bed, lie down, and split her legs. Petitioner then penetrated her with his penis. The stepdaughter testified that it hurt "very, very bad. More than the other two times." Tr. at 140. The stepdaughter further testified that Petitioner stopped when she began to bleed. Petitioner wiped up the blood and told his stepdaughter to clean herself.

Petitioner testified at trial that the March 10, 2006, incident with his wife was physical and that he had pulled her to the floor in an attempt to protect his children from her because she was going to drive away with them and he was afraid she would fall asleep at the wheel. Petitioner also denied ever sexually abusing his stepdaughter.

Regarding the firearms, Petitioner testified that he had a felony conviction and was aware that he was not allowed to possess or own firearms. He added that after he received his felony conviction, he transferred ownership and possession of the firearms to his wife and that he informed her the firearms had to be removed from the residence. He further testified he did not know the guns were still at the residence until he returned after the March 10, 2006, incident. The state called witnesses who testified that Petitioner possessed and used guns during the time he was a felon, and one witness produced a video of Petitioner firing guns.

**DISCUSSION**

**A. Exhaustion and Procedural Default**

    **1. Legal Standards**

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'afford[ing] the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986) (alteration in original)). If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards*, 529 U.S. at 451; *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

## 2. Analysis

### a. Ground One

In Ground One, Petitioner alleges he was denied the right to secure his counsel of choice, denied witnesses for his defense, and prevented from confronting adverse witnesses. In his Brief in Support, Petitioner addresses only the first contention, that he was denied the right to secure counsel of his choice. It appears, however, that the second contention is subsumed in the claim alleged in Ground Four, which is discussed below. Petitioner does not address the third portion of Ground One, which is also discussed below.

Petitioner alleged his claim of denial of the right to secure counsel of his choice in the PCR trial court.[1] He did not, however, include the claim in his assignments of error in his PCR appeal. Petitioner contends the claim is not procedurally defaulted, however, because the PCR trial court rejected the claim on an incorrect basis. Petitioner notes that the state argued the claim was a trial court error not properly brought in a PCR proceeding. The PCR trial judge, however, did not specifically address this claim in the General Judgment, so it is not apparent upon what basis the judge's decision rested. In any event, Petitioner cites no authority for the premise that a PCR trial judge's incorrect analysis excuses the failure fairly to present the issue to the state's highest court.

---

[1] Petitioner alleged he was denied the right to secure counsel because:

> Petitioner consulted with attorney Kelly Beckley in regards to trial representation. Mr. Beckley appeared at arraignment on Petitioner's behalf as reflected in the Lane County Circuit Court register entry #3 on 5/16/06. Petitioner was incarcerated and without assistance to transfer payment to Mr. Beckley. Petitioner was forced to proceed to trial with an appointed and ineffective attorney, when his income and assets precluded him from eligibility for appointed counsel.

Resp. Exh. 108, p. 3. The Court notes that despite Petitioner's statement that he was precluded from eligibility for appointed counsel, he, in fact, received exactly that. Resp. Exh. 138, Decl. of William Tufts, p. 1.

Petitioner is now barred from filing any additional appeals or PCR proceedings and, therefore, cannot "fairly present" any additional claims to the Oregon state courts. Accordingly, the claim alleged in Ground One that Petitioner was denied his right to select counsel of his choice is procedurally defaulted. Because Petitioner has not established cause and prejudice of a fundamental miscarriage of justice to excuse his procedural default, habeas corpus relief is denied on this claim.

### b. Ground Four

In Ground Four, Petitioner alleges he was denied a meaningful opportunity to present a complete defense. Specifically, Petitioner argues the trial court erred in granting the prosecution's motion in limine to exclude testimony about a past act of Petitioner's wife.

At trial, the victim testified that she disclosed Petitioner's abuse to her mother on two occasions before law enforcement became involved. Petitioner's wife confirmed the disclosure in her testimony and also that she did not report the abuse to authorities or confront Petitioner because she feared him.

Petitioner sought to offer impeachment testimony from a former neighbor about an incident that occurred during the late summer or early fall of 2006, when a three- or four-year old neighbor-child had urinated on the stepdaughter's dress. The neighbor-child's mother was prepared to testify that Petitioner's wife accosted her at a social gathering and wanted to let her know how upset she was about the incident. Defense counsel argued the evidence would tend to show that, if in fact Petitioner's wife had been given information of actual harm to her daughter, *i.e.*, that Petitioner had sexually molested her daughter, she would not have kept it to herself.

The prosecutor objected on the bases that allowing the testimony would violate Oregon Evidence Code ("OEC") Rules 401 (relevance), 403 (more prejudicial than probative), and 404 (character evidence). Specifically, the prosecutor argued:

PROSECUTOR: [T]here is no logical connection between a parent
getting upset because a neighbor child pees on her daughter's dress
and that same parent not turning her husband in when her daughter
gives her a disclosure of sexual abuse. There's no logical
connection between the two things at all. And if there were, it
would be far outweighed by the prejudicial effect.

Tr. at p. 269. The trial judge granted the motion in limine.

In his direct appeal, Petitioner did not specifically challenge the prosecutor's argument

that the evidence was not admissible under Oregon evidence rules. Instead, Petitioner argued the

trial court's decision violated his state and federal constitutional rights to present a defense and

that these constitutional rights trump any rule of evidence that might operate to exclude the

proffered testimony.

In response, the state argued that Petitioner did not present his constitutional arguments to

the trial court and, for that reason, the Court of Appeals should not consider them. Respondent

then briefly addressed the merits of Petitioner's argument, noting that Petitioner's contention that

the constitutional right to present a defense trumps the operation of a rule of evidence lacks

merit.

Respondent here contends Petitioner procedurally defaulted this claim for relief because

he failed fairly to present the claim and he cannot now do so. Petitioner does not address

Respondent's procedural default argument.

Absent unusual circumstances, Oregon law requires appellants to preserve their claims at

the trial level before raising them in the Oregon Court of Appeals. *See* Or. R. App. P. 5.45(1)

("[n]o matter claimed as error will be considered on appeal unless the claim of error was

preserved in the lower court . . . ."). When a litigant fails to preserve his claims in the lower

court, they are deemed waived. *See id.*; *Ramirez v. State of Oregon*, 214 Or. App. 400, 401

(2007). Because Petitioner failed to preserve in the trial court his constitutional claim of denial of

the right to present a defense, he presented this claim in a procedural context in which the merits could not be considered. As such, he failed fairly to present this claim to Oregon state courts. Because the time for preserving and presenting his claims is passed, it is procedurally defaulted and there is no evidence of cause to excuse the default.

The Court emphasizes that this is an issue of fair presentation, not an analysis of whether the Oregon Court of Appeals invoked an independent and adequate state procedural rule. When a state court is confronted with a claim in what may be an appropriate procedural context so as to potentially satisfy fair presentation and the state court issues a decision that is ambiguous regarding whether it addressed the merits of the claim or rejected the claim based upon an independent and adequate state procedural rule, this Court is to presume that the state court adjudicated the claim on its merits. *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Casey*, 386 F.3d at 918 n.23 ("[t]he question . . . is about fair presentation, not about divining the reasons behind the state supreme court's rejection without comment of [the petitioner's] claims").

Although Oregon appellate courts may consider an unpreserved error under certain exceptional circumstances[2], there is no reason to believe that the Court of Appeals did so here when it rejected without comment Petitioner's assignments of error. In the absence of some ambiguity regarding whether the Oregon Court of Appeals' affirmance without opinion was "interwoven with federal law," this Court declines to apply the court-created presumption that the state court proceeded to the merits of the federal claim. *Coleman*, 501 U.S. at 735-37 & n.1.

---

[2] Under Or. R. App. P. 5.45(1) the Oregon Court of Appeals may "consider an error of law apparent on the record," but such "plain error" review is conducted only in exceptional cases. *State v. Gornick*, 340 Or. 160, 165-66 (2006). Moreover, the appellate court must articulate its reasons for considering plain error. *Ailes v. Portland Meadows, Inc.*, 312 Or. 376, 382 (1991).

Because there is no apparent ambiguity, this case is distinguishable from the Ninth

Circuit's decision in *Smith v. Oregon Bd. of Parole & Post-Prison Supervision*, 736 F.3d 857

(9th Cir. 2013). In *Smith*, the Ninth Circuit applied the merits presumption to a cursory order

from the Oregon Court of Appeals stating that both preserved and unpreserved errors were

denied "without discussion." *Id.* at 861. There, the petitioner raised a Confrontation Clause for

the first time on appeal as "plain error" to the Oregon Court of Appeals based upon the

intervening Supreme Court decision in *Crawford v. Washington*, 541 U.S. 36 (2004). *Smith*, 736

F.3d at 859. The petitioner had also raised a preserved state law hearsay claim based upon the

identical facts as the Confrontation Clause claim. *Id.* at 859. Unlike in *Smith*, Petitioner here did

not attempt to prove his right to present a defense claim as "plain error" and the Oregon Court of

Appeals did not issue a written opinion in which it disposed of both preserved and unpreserved

claims arising from identical facts in an indistinguishable fashion. *See id.* at 860-61.

In summary, Petitioner did not fairly present on appeal his federal constitutional claim of

denial of the right to present a defense because it was presented to the Oregon Court of Appeals

in a procedural context in which its merits would not be considered absent special circumstances.

*See* Or. R. App. P. 5.45(1). The claim is now procedurally defaulted because the time for raising

the claim in state court has expired.

### c.  Ground Six

In Ground Six, Petitioner alleges due process violations based upon prosecutorial

misconduct in three respects: (1) the prosecutor used false evidence on material matters; (2) the

prosecutor made improper closing arguments; and (3) the prosecutor withheld exculpatory

evidence. The first and third claims were never fairly presented to any state court for review and

are thus procedurally defaulted.

Petitioner did assert the second claim (improper closing statements) on direct appeal. He raised the claim, however, as a claim of "plain error" because it was not preserved at trial. The state argued that Petitioner failed to meet the standards for "plain error" review under state law. As noted, the Oregon Court of Appeals affirmed without opinion. Respondent argues that, because "plain error" review was not available as a matter of state law, Petitioner failed fairly to present the claim in a manner in which the merits could be reached and, therefore, the claim is procedurally defaulted. Once again, Petitioner does not address Respondent's procedural default in his briefing, but instead addresses only the merits of the claim.

As with Ground Four discussed above, the Court finds it is not plausible to construe the Oregon Court of Appeals' affirmance without opinion as a decision on the merits of this claim. *Cf. Chambers v. McDaniel*, 549 F.3d 1191, 1197 (9th Cir. 2008) (noting that "unless a court expressly (not implicitly) states that it is relying upon a procedural bar, we must construe an ambiguous state court response as acting on the merits of a claim, if such a construction is plausible"). Again, in the absence of some ambiguity regarding whether the affirmance without opinion was "interwoven with federal law," this Court declines to apply the court-created presumption that the state court proceeded to the merits of the federal claim. *See Caughlin v. Premo*, 2016 WL 676375, at *4-5 (D. Or. Feb. 18, 2016) (distinguishing the Ninth Circuit's decision in *Smith* because affirmance without opinion did not create any ambiguity); *Steffler v. Belleque*, 2013 WL 182873, at *3 (D. Or. Jan. 17, 2013) (presentation of a claim to the Oregon Court of Appeals on a plain error basis is not a fair presentation for exhaustion purposes because the claim merits will not be considered absent special and important reasons to do so).

Petitioner procedurally defaulted his due process claim that the prosecutor made improper closing arguments because Petitioner raised it in a procedural context in which it would

not be considered absent special circumstances, and the time for raising the ground in state court has expired. Accordingly, Petitioner is not entitled to habeas corpus relief on this claim.

### d. Ground 10(a)

In Ground 10(a), Petitioner alleges trial counsel was ineffective for failing to move for severance of the weapons charges. As with Ground One discussed above, Petitioner did present this claim to the PCR trial court, but did not include it among the assignments of error on appeal. As such, Respondent argues, Petitioner procedurally defaulted this claim. Although Petitioner again addresses the merits of the claim in his briefing, he does not address Respondent's procedural default argument.

It is apparent from the record that Petitioner never presented this particular claim of ineffective assistance of counsel in his PCR appeal. Because Petitioner is now barred under Oregon law from doing so, the claim is procedurally defaulted and, lacking any basis to excuse the procedural default, habeas relief must be denied.

## B. Relief on the Merits

### 1. Legal Standards

#### a. Deference to State Court Decisions

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and a petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254 (e) (1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id.* at 410-11. Under 28 U.S.C. § 2254(d), a court has the "authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

In addition, § 2254(d)(2) allows a petitioner to "challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). A federal habeas court cannot overturn a state court decision on factual grounds unless the decision was "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003). This is a "'daunting standard—one that will be satisfied in relatively few cases,' especially because we must be 'particularly deferential to our state-court colleagues.'" *Hernandez v. Holland*, 750 F.3d 843, 857 (9th Cir. 2014) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)).

### b. Ineffective Assistance of Counsel

A claim of ineffective assistance of trial counsel requires the petitioner to prove that counsel performed deficiently and that the petitioner suffered prejudice. *Strickland v.*

*Washington*, 466 U.S. 668, 687–88 (1987). The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 390 (1985).

To show counsel performed deficiently, a petitioner must establish that his counsel's representation fell outside the wide range of professionally competent assistance. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012); *Strickland*, 466 U.S. at 687-88. As the Supreme Court recently noted, *"Strickland's* first prong sets a high bar." *Buck v. Davis*, 137 S. Ct. 759, 776 (2017). A lawyer "has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id*. (quoting *Strickland*, 466 U.S. at 690). *Strickland's* first prong is satisfied "only when the lawyer's errors were 'so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment[.]'" *Id*. (quoting *Strickland*, 466 U.S. at 687).

In order to establish prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Lafler*, 566 U.S. at 163; *Harrington*, 562 U.S. at 111-12. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 694.

If there is a failure of proof on either *Strickland* prong, habeas relief is not warranted. *Murray v. Schriro*, 746 F.3d 418, 457 (9th Cir. 2014). When reviewing a state prisoner's habeas claim of ineffective assistance, federal courts must apply a doubly deferential standard of review taking into account the strong presumption of competence under *Strickland*, and the deferential standard of review under 28 U.S.C. § 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

## 2. Analysis

### a. Ground 10(c)

In Ground 10(c), Petitioner alleges that trial counsel was ineffective in failing to obtain "psychological/medical" defense expert examinations. The PCR trial court denied this claim. The PCR trial judge did not explain this decision other than to state in a General Judgment that "[e]xpert testimony not useful under these facts. Reasonable strategy not to call" and "no inadequacy or prejudice by trial attorney." Resp. Exh. 147, p. 2. As noted, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. In the absence of a reasoned decision, this Court must determine what arguments or theories could have supported the state court's decision, and then must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent. *Negash v. Franke*, 2016 WL 7333124, at *3 (D. Or. Dec. 16, 2016).

In the state PCR proceeding, Petitioner submitted an Affidavit from Dr. Robert Stanulis, a licensed psychologist. Dr. Stanulis opined that "the failure to have an expert educate the jury to the general and specific difficulties in concluding abuse occurred was necessary to refute the conclusion of abuse by the State's expert witness." Resp. Exh. 120, p. 7. In response, Petitioner's trial attorney explained at some length his strategic decision not to call a defense expert:

> I have reviewed [Petitioner's] claims regarding my alleged failure
> to call an expert witness, and I have reviewed the "Affidavit of Dr.
> Robert Stanulis." I have practiced criminal law exclusively since
> 1981. I have educated myself regarding using experts in sexual
> abuse trials through many means, including reviewing literature,
> and attending seminars and training on the use of such experts. I
> was fully aware of the issues which an expert could have testified
> to had I decided to call an expert. However, in this case I made a
> strategic decision not to call an expert. I did not believe that an
> expert would have assisted in our case. I believed that reliance on
> such an expert would have been a weak strategy. Our strategy was
> based on the motive of the child victim to lie to support her
> mother. There were no issues, as suggested by Dr. Stanulis, that

the child had "memory" issues, or that she believed she was sexually abuse [sic] by "suggestibility." Our theory was that she deliberately lied. I chose not to call an expert because I did not believe that it would assist the jury in determining motive, truthfulness or that abuse had actually occurred.

Dr. Stanulis opines that it is "important for the trier of fact to be aware that no expert can determine if abuse actually occurred." I knew that I could solicit such testimony from the State's expert. Upon my cross examination of the State's expert I asked Ms. Dailey, "Ma'am, are you claiming that you can, by observation of an injury, say for certain that the cause of the injury was what the child said it was," and she replied, "No, you can't do that." Upon my questioning she testified that the physical findings were consistent with what the child said. By way of example, I asked, "You can't look at the scar on my thumb, here and tell me how that happened?," and she replied "That's correct." By further way of example I asked Ms. Dailey, "But you can't tell me that if I say, you know, I was chopping some onions and went like this -- you can look at the scar and say, well, that's possible?," and she replied "That's right." I stated in response, "And it's consistent," and she replied, "That's correct." When I asked her "And that's what you're telling us today?," she replied, "That's correct." My line of questioning of the State's expert was the kind of testimony that Dr. Stanulis claims should have been offered, and it was, through the testimony of the State's own expert. I did not believe that such testimony from our own expert would have been as credible as it was coming from the State's witness. The jury was informed through the State's expert that it could not be determined if sexual abuse actually occurred.

Dr. Stanulis writes that, "The determination that a child has been abused is not a diagnosis, as sexual abuse itself is a criminal event, not a medical event that can be diagnosed." At the time of [Petitioner's] trial, 2006, expert testimony which diagnosed that a child was a victim of sexual abuse, even in the absence of physical evidence, was admissible. And as provided above, Ms. Dailey testified that she could not tell from the physical finding if sexual abuse had occurred.

Resp. Exh. 138, pp. 6-7.

Counsel's affidavit sufficiently explains his failure to obtain an expert regarding the

victim's mental condition. It is less persuasive regarding the victim's physical condition.

Although it is true that counsel elicited from the State's expert witness that she could not

conclusively determine that abuse occurred, counsel did not elicit any testimony from this witness, nor any other expert witness, of any other possible explanation for the physical injuries. There was, for example, no testimony that gymnastics or horsebackriding or some other common activity could have caused the injuries. Without providing any possible alternative causation, the concession elicited from the State's expert offered little benefit to Petitioner. The prosecutor was able to argue in closing precisely what she repeatedly did—that Petitioner offered no other evidence to explain the injuries and that there was no other explanation before the jury for the injuries but the alleged sexual abuse.

Petitioner, however, has provided no evidence to this Court, nor to the PCR court, that the victim engaged in any activity that could have resulted in her injuries and that there was an expert who could have so testified. Thus, and in light of the highly deferential standard of review under § 2254(d) and the Supreme Court's admonition that a habeas court not second guess trial counsel's strategic decisions, Petitioner has not demonstrated that trial counsel rendered ineffective assistance by failing to present expert testimony on the victim's mental or physical state. The PCR court's decision that expert testimony was not useful on the facts before the court and that trial counsel employed a reasonable strategy was not objectively unreasonable in light of the evidence presented in the state-court proceeding. The Court will, however, issue a Certificate of Appealability on this ground with respect to obtaining an expert regarding the victim's physical condition.

### b. Ground 10(f)

In Ground 10(f), Petitioner alleges trial counsel was ineffective in failing to object to the admission of hearsay statements where the state failed to provide adequate notice of its intent to offer those statements under Oregon Evidence Code Rule 803(18)(a), (b). Petitioner does not argue that the prosecution failed to give notice, or gave late notice, but instead that Petitioner was

prejudiced by the lack of specificity in the state's pretrial notice because the discovery provided to the defense that was referenced in the notice did not contain the specific statements later offered by the state during trial. The PCR court rejected this claim, finding: "Statements of child reporting to friends prior to d[omestic]v[iolence] incident were relevant and admissible to rebut the defense; Proper notice given, no surprises." Resp. Exh. 147, p. 2.

As noted, the PCR court determined that the state complied with the evidentiary rule. Accordingly, Petitioner cannot show he was prejudiced by counsel's failure to object to the admission of the hearsay statements on the basis the state's notice was inadequate under Oregon Evidence Code Rule 803(18)(a), (b). *See Pereles v. Galaza*, 2003 WL 22765338, at *20 (N.D. Cal. Nov. 17, 2003) (habeas petitioner cannot establish prejudice under *Strickland* for counsel's failure to seek admission of evidence where state court found no reasonable probability the evidence was admissible under state law). Accordingly, the PCR court's decision denying relief on this claim was not objectively unreasonable.

### c. Ground 10(h)

In Ground 10(h), Petitioner alleges trial counsel was ineffective for failing to object to prosecutorial misconduct. Petitioner argues the prosecution made improper and egregious statements in her closing argument to which counsel should have objected. Specifically, Petitioner contends the prosecutor improperly exhorted the jury to protect the victim, made unfounded statements of personal expertise, misstated the record, improperly vouched for the credibility of the state's witnesses, shifted the burden of proof and functionally testified, and made impermissible attacks on the defense. Petitioner argues that had counsel objected and sought a remedy, it is highly probable that the trial court would have taken curative steps.

Petitioner asserted this claim in his state PCR proceeding. Again, the PCR trial court did not directly address the claim in the General Judgment, other than to find "no inadequacy or prejudice by trial attorney." Resp. Exh. 147, p. 10.

Attorneys are given latitude "in the presentation of their closing arguments," and courts must allow prosecutors "to strike hard blows based on the evidence presented and all reasonable inferences therefrom." *Ceja v. Stewart*, 97 F.3d 1246, 1253-54 (9th Cir. 1996) (quoting *United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1999)). "[F]ailure to object during a closing summation generally does not constitute deficient performance. '[A]bsent egregious misstatements, the failure to object during closing argument and opening statement is within the wide range of permissible professional legal conduct.'" *Zapata v. Vasquez*, 788 F.3d 1106, 1115 (9th Cir. 2015) (quoting *Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013) (first alteration added, second alteration in original).

The Court has concerns about several of the comments made by the prosecutor in closing argument. For example, the prosecutor arguably appears to either have testified as an expert indicating special knowledge regarding facts not in the record, or vouched for the victim, by stating "So how does a kid make that up? It doesn't happen. It doesn't happen." Tr. 510. Similarly, the prosecutor stated that "She [the victim] told people. And kids don't always tell. Kids don't tell. Kids keep it a secret. . . . That's normal for one of these situations. She's keeping it a secret." Tr. 519-20. Looking at the closing argument as a whole, however, and considering the testimonial evidence at trial, the Court does not find that the prosecutor's closing argument contains sufficiently egregious misstatements that so infected the trial with unfairness as to make the resulting conviction a denial of due process. Thus, defense counsel's failure to object to those statements is not unreasonable professional conduct.

Moreover, Petitioner cannot demonstrate that he was prejudiced by any failure of trial counsel to object. In order to do so, Petitioner must show that, after viewing such a claim against the entire record, the jury would have reached a different verdict if trial counsel had objected to the alleged instances of prosecutorial misconduct. Even if an objection to the first comment would have stopped the prosecutor from making the additional improper comments, in light of the complete record in this case, the Court does not find that Petitioner has made such a showing. The Court does, however, grant a Certificate of Appealability on this ground.

### d. Ground 11

In Ground 11, Petitioner argues that cumulative errors combined to deprive him of due process. Where no single error is prejudicial but "where there are several substantial errors, 'their cumulative effect may nevertheless be so prejudicial as to require reversal.'" *Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002) (quoting *United States v. de Cruz*, 82 F.3d 856, 868 (9th Cir. 1996). Where "no error of constitutional magnitude occurred, [however], no cumulative prejudice is possible." *Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011). Because the Court has found that Petitioner has not established that there was any error of constitutional magnitude, the Court denies this ground. The Court will, however, issue a Certificate of Appealability on this ground.

## C. Claims Not Addressed by Petitioner

As noted, Petitioner does not argue the merits of several of his pleaded grounds for relief in his supporting memorandum, nor does he address Respondent's arguments as to why relief on these claims should be denied. As such, Petitioner has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims). Even if Petitioner had briefed the merits of

these claims, however, the Court has examined them based upon the existing record and determined that they do not entitle him to relief.

**D.  Evidentiary Hearing**

Finally, Petitioner seeks an evidentiary hearing to develop facts in support of his claim that he was denied his right to choice of counsel. As noted, however, Petitioner procedurally defaulted this claim, and there is no basis upon which to excuse the procedural default. As such, an evidentiary hearing on the merits of this claim is neither necessary nor in the interests of judicial economy. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (where the record in the case precludes habeas relief, a district court is not required to hold an evidentiary hearing). Accordingly, Petitioner's request for an evidentiary hearing is denied.

**CONCLUSION**

The Court DENIES relief on the Petition for Writ of Habeas Corpus (ECF 2) and denies Petitioner's request for an evidentiary hearing. The Court finds that oral argument will not help resolve this matter, thus Petitioner's request for oral argument (ECF 74) is also DENIED. The Court issues a Certificate of Appealability on Grounds 10(c) for failing to obtain expert testimony regarding the victim's physical condition, 10(f), and 11. The Court denies a Certificate of Appealability on all remaining grounds on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right on those grounds pursuant to 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED**.

DATED this 24th day of April, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge